IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JAMES B.,[1] | Case No. 3:18-cv-00379-AA |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

AIKEN, District Judge:

Plaintiff James B. brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Supplemental Security Income ("SSI") on February 16, 2017. For the reasons set forth below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

///

///

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## BACKGROUND

Plaintiff was born on August 27, 1982. On October 27, 2006, plaintiff was found unresponsive on the street suffering from a traumatic brain injury. He was taken to the hospital and underwent a craniotomy to address an intracerebral hemorrhage and subdural hematoma, subsequent to which he was observed to be suffering from certain cognitive deficits. He remained in the hospital for 28 days. He developed epilepsy and was hospitalized multiple times following seizures in the subsequent years. At the time of his administrative hearing, plaintiff worked part-time as a screen printer and warehouse worker—a job he acquired with the assistance of a vocational specialist who identifies employers willing to accommodate workers with functional limitations.

Plaintiff applied for SSI on December 16, 2014 alleging a disability onset date of November 15, 2014. Following denials at the initial and reconsideration levels, an administrative law judge ("ALJ") held a hearing at which the claimant and a vocational expert ("VE") testified, after which she issued an unfavorable decision on February 16, 2017. After the Appeals Council denied plaintiff's request for review, plaintiff filed a timely complaint in this Court.

## STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The district court must affirm the ALJ's decision unless it contains legal error or lacks substantial evidentiary support. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citing *Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1052 (9th Cir. 2006)). Harmless legal errors are not grounds for reversal. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.

2005) (citation omitted). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (citation and internal quotation marks omitted). The complete record must be evaluated and the evidence that supports and detracts from the ALJ's conclusion must be weighed. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is subject to more than one interpretation but the Commissioner's decision is rational, the Commissioner must be affirmed, because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, determining: "(1) whether the claimant is 'doing substantial gainful activity'; (2) whether the claimant has a 'severe medically determinable physical or mental impairment' or combination of impairments that has lasted for more than 12 months; (3) whether the impairment 'meets or equals' one of the listings in the regulations; (4) whether, given the claimant's 'residual functional capacity,' the claimant can still do his or her 'past relevant work' and (5) whether the claimant 'can make an adjustment to other work.'" *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 20 C.F.R. §§ 404.1520(a), 416.920(a)).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity ("SGA") even though his earnings were technically above the income dollar threshold for SGA. This was because, based on the contents of a work activity questionnaire submitted by plaintiff's employer, the ALJ found that plaintiff was only "60 percent as productive as other employees" and received "special help," although she did not reference the questionnaire explicitly. Tr. 78. At step two, the ALJ found that plaintiff "has the following severe impairments: seizure disorder, major neurocognitive disorder status-post traumatic brain injury and unspecified depressive disorder." Tr. 79. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the requirements of a listed impairment.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e); § 416.920(e). The ALJ found that plaintiff

> has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can occasionally climb ramps and stairs and occasionally balance. He can do work that does not involve climbing ladders, ropes, or scaffolds. He can do simple routine tasks and can do work that does not involve exposure to hazards.

Tr. 82. No mention was made of plaintiff's productivity limitation or its underlying cause. At step four, the ALJ found plaintiff "unable to perform any past relevant work." Tr. 89. At step five, the ALJ considered plaintiff's age, education, work experience, and RFC and found that there were other jobs existing in significant numbers in the national economy that plaintiff could perform, including floor cleaner, laundry worker, and order picker. Accordingly, the ALJ found that plaintiff was not disabled under the Act.

## DISCUSSION

Plaintiff's supervisor submitted a work activity questionnaire (the "Questionnaire") to the ALJ indicating that plaintiff received special assistance at work and that he was only 60% as

productive as his similarly situated coworkers. The parties disagree about whether the ALJ accepted or rejected the Questionnaire in her opinion. Plaintiff argues that either the Questionnaire was rejected, in which case the ALJ should have provided germane reasons for its rejection, or it was accepted, in which case its content should have been included in the ALJ's hypotheticals to the VE—the ALJ erred in either case. The Commissioner argues that the ALJ properly credited the Questionnaire in her SGA analysis but wasn't required to credit the Questionnaire's content as part of her broader assessment of plaintiff's overall limitations.

I first turn to whether the ALJ was required to address the Questionnaire in her opinion.

An ALJ must generally consider all lay witness testimony and explain the weight given to it. *Stout*, 454 F.3d at 1053. If the testimony is rejected, the ALJ must give specific and germane reasons for doing so. *Id.*; *see also Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) ("lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment."). A work activity questionnaire is lay witness testimony that the ALJ must address. *Gray v. Astrue*, 2012 WL 4097762, at *9 (D. Idaho Sept. 17, 2012); *Smiggs v. Astrue*, 2011 WL 4544052, at *6 (D. Or. Sept. 28, 2011) (it was legal error for the ALJ to not address a work activity questionnaire that stated plaintiff was only 70% as productive as other employees).

Here, the Questionnaire was submitted by Renee Capp, plaintiff's manager. It was Ms. Capp's testimony regarding plaintiff's work limitations and it included numerical and explanatory assessments of plaintiff's workplace productivity. If the ALJ was rejecting the Questionnaire, she was required to give specific and germane reasons, and if she was accepting at least some of the testimony, to explain the evidentiary weight she was giving to it. *Stout*, 454 F.3d at 1053. Accordingly, I find that the Questionnaire is lay testimony that the ALJ should have addressed.

Page 5 – OPINION AND ORDER

I next turn to whether the ALJ did in fact address the Questionnaire in her opinion.

ALJs are obliged to comment on work activity questionnaires because they include information about a claimant's ability to work. *Chapman v. Colvin*, 668 F.App'x 720, 720. (9th Cir. 2016) (citing *Tobeler v. Colvin*, 749 F.3d 830, 833–34 (9th Cir. 2014); *Stout*, 454 F.3d at 1053). District court cases within the Ninth Circuit have also concluded that work activity questionnaires must be addressed just like other testimony from lay witnesses. *See, e.g., Gray*, 2012 WL 4097762, at *9; *Smiggs*, 2011 WL 4544052, at *6.

I find that the Questionnaire was not properly considered. Although the Commissioner argues that the ALJ accepted the Questionnaire and points to one line in the ALJ's step one analysis, this is insufficient. There are no germane reasons provided for either the ALJ's acceptance or rejection of the evidence. *See, e.g., Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 684, 694 (9th Cir. 2009). There is also no indication in the opinion that the ALJ weighed or explained the Questionnaire's role in her ultimate determination. In fact, some courts have found that an ALJ erred when she failed to explain the weight given to a work activity questionnaire despite generally discussing it in assessing a claimant's credibility—which is more than can be said about the one line that the ALJ quoted from the Questionnaire. *See, e.g., Gray*, 2012 WL 4097762, at *9. The problem with the ALJ's failure to address the Questionnaire is compounded by the fact that the VE testified that workers having a productivity deficit similar to plaintiff's wouldn't be able to sustain unskilled full-time employment *even with respect to the jobs identified by the VE* in response to the ALJ's hypothetical. *See* Tr. 37.

Additionally, the Commissioner's argument that the ALJ did not have to credit the Questionnaire in her broader assessment of plaintiff's limitations just because she credited it in her SGA analysis also fails. The Commissioner cites *Katz v. Sec'y of Health & Human Servs.*, 972

F.2d 290, 293 (9th Cir. 1992) for the proposition that an ALJ need not explain her rejection of medical opinions in her SGA analysis. But *Katz* provides no guidance here; it simply holds that an ALJ doesn't have to address a doctor's opinion that a claimant cannot perform work if an ALJ finds that the plaintiff is already working for the purposes of the SGA analysis. *Katz*, 972 F.2d at 293. The core issue here is what comes of an ALJ's decision to *accept* an opinion, lay or otherwise, in the SGA analysis if she is silent regarding its implication for her broader assessment of plaintiff's overall limitations. Either the ALJ found the Questionnaire credible and accepted it, in which case she should explain its evidentiary weight beyond the SGA analysis, or she rejected it for purposes other than the SGA, in which case she needs to provide specific and germane reasons for its rejection. In both cases, an ALJ must provide some explanation of the Questionnaire's evidentiary weight and the ALJ failed to do so here.

I next turn to whether the error is harmless.

When an ALJ fails to properly comment on lay witness testimony, the reviewing court must determine if the error is harmless, *i.e.*, "inconsequential to the ultimate nondisability determination in the context of the record as a whole." *Molina*, 674 F.3d at 1122 (citations and internal quotation marks omitted). Harmless legal errors are not grounds for reversal. *Burch*, 400 F.3d at 679. However, a reviewing court cannot consider an error harmless, "unless it can confidently conclude that no reasonable ALJ . . . could have reached a different conclusion." *Stout*, 454 F.3d at 1056.

I find that the error is harmful. The Questionnaire indicates that plaintiff receives significant accommodations at work and is much less productive than his similarly situated peers. The Questionnaire also indicates that plaintiff needs to be constantly supervised and reminded of his current task. He sometimes seems confused and can't even remember his daily duties. *Id.*

The very purpose of lay testimony from a claimant's employer is to gain greater insight into how a claimant's limitations are affecting his ability to work. *See* SSR 06-03p, *available at* 2006 WL 2263437, at *2 (stating that lay testimony may provide information "based on a special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."). A reasonable ALJ could conclude that properly crediting the Questionnaire would require a different RFC determination and different hypotheticals to the VE because the Questionnaire provides important information about how the claimant's limitations are affecting his ability to work.

Even if I assume that the ALJ accepted the Questionnaire submitted by Ms. Capp, I would still conclude that the ALJ erred.

In her RFC determination, an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *See* SSR 96-8p, *available at* 1996 WL 374184, at *5; *accord* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Moreover, SSR 96-8p directs that "[c]areful consideration" be given to any evidence about symptoms "because subjective descriptions may indicate more severe limitations or restrictions than can be shown by medical evidence alone." *See* SSR 96-8p, *available at* 1996 WL 374184, at *5. When giving such consideration, if the record establishes the existence of a medically determinable impairment that could reasonably give rise to the reported symptoms, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect. *See* SSR 96–7p, *available at* 1996 WL 374186, at *1; 20 C.F.R. §§ 404.1529, 416.929; *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir.1996). Additionally, although an ALJ is required to include only those limitations which are supported by substantial evidence in the VE hypotheticals, *see Osenbrock v. Apfel*, 240 F.3d 1157, 1163–65 (9th Cir. 2001), she is not free to ignore properly

Page 8 – OPINION AND ORDER

supported limitations, including symptom testimony provided by a lay witness. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006).

Here, the Questionnaire indicates that plaintiff is not as productive as his coworkers because one or more of the issues discussed in the Questionnaire limits his productivity, *e.g.*, that he is forgetful, confused, and off-task. In short, he has *a limitation*. Assuming the ALJ accepted the Questionnaire's productivity limitation, her failure to include that limitation in the RFC and VE hypotheticals is likely harmful error. The ALJ only seems to have included plaintiff's limitations with respect to the types of actions plaintiff can engage in, *e.g.*, climbing and simple routine work. There is no mention of plaintiff's productivity limitation or its underlying cause. To the extent that plaintiff's productivity limitation was admitted, it was admitted generally, and such a limitation must have been included in the RFC and hypotheticals to the VE. Failure to do so would be error.

Finally, I turn to whether the case should be remanded for further proceedings or an immediate award of benefits.

When the ALJ errs in denying a plaintiff's disability claim, the typical remedy is a remand for further proceedings. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). However, a district court should instead remand for an immediate award of benefits where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* Even when these three requirements are met, remand for further proceedings is appropriate only if "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id.* at 1021.

The requirements to remand for an immediate award of benefits are not met here. While the record has been fully developed, the transcript indicates that it's possible for the VE to find other jobs in the national economy for plaintiff to engage in. This is because although the VE stated that plaintiff's productivity limitation may preclude full-time employment, the VE was responding to a question from plaintiff's attorney about whether plaintiff's productivity limitations would prohibit him from engaging in "any of *these* jobs," *i.e.*, the jobs that the VE found appropriate for plaintiff in response to the ALJ's hypotheticals. Tr. 37. The VE's answer, then, does not indicate that plaintiff is too disabled to find any work—just that the initial jobs identified by the VE may be too demanding. Thus, even with his productivity limitation, other appropriate jobs may exist for plaintiff.

Moreover, the VE testified that plaintiff's current job of silk screener was inconsistent with plaintiff's RFC determination, which requires that he be limited to simple and routine work. Plaintiff's productivity limitation, however, was assessed only in the context of his job as a silk screener. It could very well be the case that plaintiff is not as productive as other employees simply because his current job is inconsistent with his RFC, and that there are other jobs where his productivity would not be an issue relative to his coworkers. Therefore, I find that remanding for an immediate payment of benefits to be inappropriate at this time as the case could benefit from further proceedings.

## CONCLUSION

The Commissioner's decision is REVERSED and REMANDED, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings not inconsistent with this opinion.

IT IS SO ORDERED.

Dated this 18 day of December, 2018.

_____
Ann Aiken
United States District Judge